*NOT FOR PUBLICATION*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RONALD SALAHUDDIN, | : |
| | : |
| Petitioner, | : |
| | : Crim. No. 10-104 (FLW) |
| v. | : |
| | : **OPINION** |
| UNITED STATES OF AMERICA, | : |
| | : |
| Respondent. | : |

**WOLFSON, United States District Judge:**

This action arises from Petitioner Ronald Salahuddin's ("Salahuddin") application for a writ of error *coram nobis*, seeking to vacate his 2011 criminal conviction for conspiracy to obstruct interstate commerce by extortion under color of official right, in violation of 18 USC § 1951(a) (the "Hobbs Act"). As a basis for his petition, Salahuddin argues that the Court incorrectly instructed the jury on the definition of an "official action" in contravention of the Supreme Court's decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016). Salahuddin claims that the defective jury instructions constitute a fundamental error resulting in his wrongful conviction. The Government has opposed the petition. For the reasons set forth below, Salahuddin's application for a writ of error *coram nobis* is denied in all respects.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The pertinent facts of this case were set forth in a prior Opinion issued on July 19, 2012, and are incorporated herein, *see United States v. Salahuddin*, No. 10-104, 2012 U.S. Dist. LEXIS 100296 (D.N.J. July 19, 2012); nevertheless, the Court provides a brief summary for the purposes of this Motion.

1

Salahuddin was formerly Deputy Mayor of the City of Newark in charge of Public Enforcement, and Sonnie L. Cooper ("Cooper") (cumulatively, "Defendants") owned a demolition business in Newark. The conspiracy between the two involved a circular plan whereby Salahuddin would direct government contracts to a third party, Nicholas Mazzocchi ("Mazzocchi"), if Mazzocchi would then subcontract work to Cooper. This plan benefitted Salahuddin, who had a silent financial interest in Cooper's business, S. Cooper Brothers Trucking. The Government argued at trial that the idea for the conspiracy originated when Salahuddin met with Joseph Parlavecchio ("Parlavecchio"), who provided consulting work to several Newark demolition companies, including Mazzocchi's. Indeed, Salahuddin and Cooper were introduced to Mazzocchi through Parlavecchio. Unbeknownst to the other three, Mazzocchi was cooperating with the FBI and was recording his conversations with Salahuddin, Cooper, and Parlavecchio.

Based on these dealings and the conversations recorded by Mazzocchi, the Government brought charges against Salahuddin and Cooper. On February 18, 2010, a grand jury in Trenton, New Jersey, returned a five-count indictment against Defendants. Count One charged Defendants with a conspiracy to obstruct interstate commerce by extortion under color of official right in violation of 18 USC § 1951(a), also known as the Hobbs Act. Count Two charged that Defendants knowingly and willfully attempted to obstruct interstate commerce by extortion under the color of official right, in violation of 18 USC § 1951(a) and 18 USC § 2. Counts Three through Five charged violations of 18 U.S.C. § 666(a)(1)(B) and 18 USC § 2, in that Defendants knowingly and corruptly solicited, demanded, accepted, and agreed to accept as bribes things of value to influence and reward Salahuddin's effort to steer Newark demolition contracts from the City of Newark to Mazzocchi and Cooper. Following a trial, the jury returned its verdict on

October 14, 2011, and Defendants were convicted only on Count One, that they conspired to violate the Hobbs Act. On February 11, 2013, the Court sentenced Salahuddin to one year and one day of confinement.

Following the verdict, Defendants moved to enter an acquittal or to vacate the conviction and order a new trial pursuant to Fed. R. Civ. P. 29 and Fed. R. Civ. P. 33. Specifically, Defendants argued that the evidence failed to demonstrate the requisite elements of conspiracy and that the conviction was against the weight of the evidence. Moreover, Salahuddin separately maintained, *inter alia*, that the verdict was inconsistent because he was convicted on Count One, although the remaining counts on which he was found not guilty incorporated conduct alleged in Count One. Salahuddin further maintained that a Hobbs Act conspiracy required an overt act of agreeing to, and accepting, the benefits promised.

On July 19, 2012, the Court issued an Opinion wherein Defendants' arguments were rejected in their entirety, ultimately finding that the evidence supported that Defendants purposefully engaged in a plan to use Salahuddin's influence as Deputy Mayor. Defendants subsequently appealed to the Third Circuit, raising numerous challenges to the jury instructions and proofs required for conviction. On September 3, 2014, the Third Circuit affirmed this Court's decision and held, among other things: (1) Hobbs Act conspiracy does not require proof of an overt act; (2) the conviction was valid, regardless of whether Defendants successfully obtained benefits; (3) the instructions correctly defined the element "extortion under color of official right"; and (4) the jury was not required to unanimously decide on the "object" of the conspiracy. *See United States v. Salahuddin*, 765 F.3d 329 (3d Cir. 2014). Following the affirmance of Defendants' conviction, Defendants filed a writ of certiorari to the United States

Supreme Court on the question whether proof of an overt act is required for a Hobbs Act conspiracy. Defendants' request was denied on May 18, 2015.

Now, over three years later, Salahuddin moves to vacate his conviction pursuant to a writ of error *coram nobis* under 28 U.S.C. § 1651(a). In that regard, Salahuddin argues that the jury instructions given during his trial are erroneous for three separate reasons. First, Salahuddin contends that the instructions are in conflict with the Supreme Court's decision in *McDonnell*, because they erroneously defined the term "official act" as used in the Hobbs Act. Petition for Writ of Error *Coram Nobis* ("Pet.'s Brief"), at 26-32. As a consequence, Salahuddin maintains that he was wrongfully charged for conduct which was deemed permissible. Second, Salahuddin argues that the jury instructions failed to condition his conviction on a finding that he acted under "color of official right" and "obstructed interstate commerce." *Id*. at 32-40. Lastly, Salahuddin avers that the instructions did not require the jurors to be unanimous as to which of the acts Salahuddin allegedly conspired to achieve, as is required under the pertinent law. *Id*. at 40-47.

## II.    DISCUSSION

### A.    Standard of Review

Federal courts are accorded the authority to issue a writ of error *coram nobis* in criminal matters pursuant to the All Writs Act, 28 USC § 1651(a), after a sentence has been completed. *United States v. Stoneman*, 870 F.2d 102, 105 (3d Cir.1989) (citing *United States v. Morgan*, 346 U.S. 502 (1954)). Traditionally, "[t]he writ was . . . available only to bring before the court factual errors material to the validity and regularity of the legal proceeding itself, such as the defendant's being under age or having died before the verdict." *Evola v. AG of the United States*, 190 Fed. Appx. 171, 173 (3d Cir. 2006) (citations and quotations omitted). However, a writ of error is applied more broadly today, transforming it into a vehicle by which a petitioner may

"collaterally attack[] a conviction." *Stoneman*, 870 F.2d at 105-06; *Hauptmann v. Wilentz*, 570 F. Supp. 351, 401 (D.N.J. 1983).

Notwithstanding its availability, a writ of error *coram nobis* is an "infrequent and extraordinary form of relief that is reserved for exceptional circumstances." *United States v. Babalola*, 248 Fed. Appx. 409, 411 (3d Cir. 2007) (citations and quotations omitted). In that connection, the Third Circuit has identified the following policy considerations which strongly weigh against vacating a prior conviction:

> Because of the strong interest in finality of judgments, the standard for a collateral attack on a conviction via a writ of error *coram nobis* is more stringent than the standard applicable on a direct appeal. Indeed, because a defendant seeking *coram nobis* relief has already completed [his] sentence, the interests in favor of revisiting the judgment are even less than in the habeas context, where the petitioner is still in custody. Thus, only where there are errors of fact of the *most fundamental kind*, that is, such as to render the proceeding itself irregular and invalid . . . can redress be had, and relief will be granted only when circumstances compel such action to achieve justice.

*Babalola*, 248 F. App'x at 411-12 (citations and quotations omitted) (emphasis in original). The Supreme Court has similarly described the writ of error as an "exceptional" award, finding that it "is difficult to conceive of a situation in a federal criminal case today where [a writ of error *coram nobis*] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (citation omitted).

"Despite this heavy burden, both the Supreme Court and [the Third Circuit] have reaffimed the continued existence of *coram nobis* relief in the appropriate circumstances." *Id*. at 412. Specifically, a writ of error may be awarded when a petitioner is no longer in custody and demonstrates four factors: "(1) he suffers continuing consequences of the conviction, (2) no remedy was available at the time of trial, (3) sound reasons exist for failing to seek relief earlier, and (4) the trial contained errors "'of the most fundamental kind.'" *Id*. at 105-06; *United States v.*

*Stuler*, 614 Fed. Appx. 597, 598 (3d Cir. 2015) (citing *Stoneman*, 870 F.2d at 106); *Evola v. AG of the United States*, 190 Fed. Appx. 171, 174 (3d Cir. 2006) (citations omitted). The failure to satisfy each of these factors will defeat a petition for *coram nobis* relief. *Stuler*, 614 Fed. Appx. at 598; *Borelli v. United States*, No. 17-2814, 2017 U.S. Dist. LEXIS 149088, at *4 (D.N.J. Sept. 14, 2017) (citing *Stoneman*, 870 F.2d at 106).

## B.    *McDonnell v. United States*

The instant petition stems from the Supreme Court's decision in *McDonnell*, wherein the Supreme Court provided clarification as to what constitutes an "official action" under the Hobbs Act. There, Robert McDonnell, the former Governor of Virginia, was convicted of honest services fraud and Hobbs Act extortion. *McDonnell*, 136 S. Ct. at 2361. While in office, McDonnell and his wife accepted over $175,000 in "loans, gifts and other benefits" from Jonnie Williams. *Id*. Williams served as the chief executive officer of Star Scientific, a company based in Virginia, which developed a nutritional supplement from a compound found in tobacco. Williams sought McDonnell's assistance in securing research studies in connection with Star Scientific's nutritional supplement from Virginia's public universities. *Id*.

The Government argued that, during the course of their relationship, McDonnell accepted bribes in exchange for various "official acts," aimed at obtaining research studies from Virginia's public universities for Williams. *Id*. at 2365. The official acts that McDonnell allegedly performed in his capacity as Governor comprised: (1) "arranging meetings for Williams with other Virginia officials to discuss Star Scientific's product"; (2) "hosting events for Star Scientific at the Governor's Mansion"; and (3) "contacting other government officials concerning the research studies." *Id*. at 2361 (quotations omitted). McDonnell was eventually indicted on various charges.

As agreed upon by the parties, the district court relied on, and incorporated, the federal bribery statute's definition of "official act" in the jury instructions. *Id*. at 2365. Specifically, that statute provides that an "official act" includes "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 USC § 201(a)(3). In addition, the district court instructed that an "official act" "encompassed acts that a public official customarily performs, including acts in furtherance of longer-term goals or in a series of steps to exercise influence or achieve an end." *Id*. at 2366. (quotations omitted). Following the court's instructions to the jury, McDonnell was convicted of honest services fraud and extortion. The Fourth Circuit Court of Appeals affirmed the jury's verdict.

In an unanimous Opinion, the Supreme Court vacated the Fourth Circuit's decision and remanded the case. *Id*. at 2375. In doing so, the Supreme Court held that the disputed jury instructions improperly described what constitutes an "official act" and, in that connection, McDonnell may have been convicted for engaging in permissible conduct. *Id*. While also relying on the federal bribery statute, the Supreme Court defined an official act as "a decision or action on a "question, matter, cause, suit, proceeding or controversy." *Id*. at 2371 (quotations omitted). The Supreme Court then set forth a two-pronged test for determining whether an individual performs an "official act":

> [First,] [t]he question, matter, cause, suit, proceeding or controversy must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is pending or may by law be brought before a public official.

> [Second,] [to] qualify as an official act, the public official must make a decision or take an action on that question, matter, cause, suit, proceeding or controversy,

or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act" by another official.

*Id.* at 2372 (quotations omitted). Based on these principles, the Supreme Court reasoned that, without more, "[s]etting up a meeting, talking to another official, or organizing an event (or agreeing to do so) . . . does not fit th[e] definition of "official act." *Id.* A contrary holding, the Supreme Court explained, broadly interpreting an "official act" would "raise significant constitutional concerns[,]" criminalizing routine conduct necessary for government representatives to properly represent their constituents. *Id.*

## C.     *Coram Nobis* Relief

In the instant matter, all of the requirements for a writ of error *coram nobis* are disputed, with the exception of whether Salahuddin is "in custody."[1] Accordingly, Salahuddin must successfully demonstrate that he is suffering from ongoing collateral consequences arising from his criminal conviction, the instant application is timely filed, no other remedies were previously available at the time of his trial or on appeal, and an award of *coram nobis* will cure a "fundamental error." The failure to demonstrate any one of these requirements is fatal to Salahuddin's petition for a writ of error *coram nobis*.[2]

### a.     **Collateral Consequences**

---

[1]     Salahuddin is not in custody for the purposes of *coram nobis* relief, as he fully served his sentence and his supervised release, but alleges ongoing consequences arising from his conviction. *See infra.*

[2]     Various district courts have retroactively applied the Supreme Court's decision in *McDonnell* in considering whether to issue a writ of error *coram nobis*. *See, e.g., United States v. Spellissy*, No. 05-475, 2017 U.S. Dist. LEXIS 25611 (M.D. Fla. Feb. 22, 2017); *United States v. Woodward*, No. 17-12036, 2017 U.S. Dist. LEXIS 172084 (D. Mass. Oct. 18, 2017); *United States v. Verrusio*, No. 09-0064, 2017 U.S. Dist. LEXIS 60962 (D.D.C. April 21, 2017).

As to the first requirement, Salahuddin contends that the following collateral consequences stem from his criminal conviction: (1) he is "ineligible to sit on a jury"; (2) he "was forced to surrender his personal firearms and may no longer purchase or carry firearms"; (3) he "is barred from employment in the one and only field in which he is experienced and trained"; (4) "his New Jersey pension has been reduced to 80% of what it would have been but for the instant federal conviction"; and (5) his current criminal conviction "may result in harsher penalties for future criminal offenses . . . ." Pet.'s Brief, at 20-22. Salahuddin contends that each of these harms, standing alone, sufficiently constitutes a collateral consequence as defined under the pertinent law.

Circuit courts have set forth various standards in considering whether a petitioner has sufficiently alleged a collateral consequence. On the one hand, the Fourth and Ninth Circuits require a minimal showing, reasoning that a petitioner's felony status, with nothing more, adequately constitutes a collateral consequence. *See Hirabayashi v. United States*, 828 F.2d 591, 606 (9th Cir. 1987) ("We have repeatedly reaffirmed the presumption that collateral consequences flow from any criminal conviction.") (quotation omitted); *United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1998) (noting that the petitioners "face the remainder of their lives branded as criminals . . . ."). Indeed, under the approach of these circuits, a petitioner may be entitled to an award of *coram nobis,* even if that petitioner cannot identify a present harm which results from a criminal conviction.

On the other hand, a majority of the circuit courts, including the First, Second, Third, Fifth, and Eighth Circuits, have adopted a more demanding standard. Pursuant to that standard, felony status, alone, is not sufficient; rather, a petitioner must articulate an ongoing harm which flows from the allegedly invalid conviction. *See, e.g.*, *Hager v. United States*, 993 F.2d 4, 5 (1st

Cir. 1993); *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992); *Stoneman*, 870 F.2d at 106; *United States v. Drobny*, 955 F.2d 990, 996 (5th Cir. 1992); *Stewart v. United States*, 446 F.2d 42, 43-44 (8th Cir. 1971). The Seventh Circuit demands that a petitioner demonstrate an even higher showing. In addition to the requirement of a "present harm," excluding "purely speculative harms or harm that occurred completely in the past," the alleged collateral consequence must: (1) "arise out of the erroneous conviction [and (2)] the potential harm to the petitioner must be more than incidental." *United States v. Craig*, 907 F.2d 653, 658 (7th Cir. 1990). Accordingly, the weight of authority requires a higher showing than that which the Fourth and Ninth Circuits impose upon petitioners.

While the Third Circuit has not explicitly adopted the Seventh Circuit's more exacting standard, a petitioner in this circuit must, at a minimum, articulate more than moral stigma arising from a conviction. *United States v. Cariola*, 323 F.2d 180, 182 (3d Cir. 1963) ("The moral stigma of a judgment which affects no legal rights presents no case or controversy of federal cognizance.") (citation omitted); *see also United States v. Case*, 684 F. Supp. 109, 113 (D.N.J. 1988) ("[M]ere moral stigma of a conviction will not suffice. An applicant must show that he is suffering some present adverse legal consequence from his prior conviction.") (citation omitted); *United States v. Biondi*, No. 5-418, 2014 U.S. Dist. LEXIS 44220, at *7 (E.D. Pa. April 1, 2014) ("Courts in this circuit have also held that purely speculative consequences do not warrant *coram nobis* relief.") (citation omitted); *United States v. Biondi*, No. 5-418, 2014 U.S. Dist. LEXIS 44220, at *7 (E.D. Pa. April 1, 2014) ("Courts in this circuit have also held that purely speculative consequences do not warrant *coram nobis* relief.") (citation omitted); *United States v. Panarell*a, No. 00-655, 2011 U.S. Dist. LEXIS 84102, at *24 (E.D. Pa. July 29, 2011) ("[A] petitioner must establish something more than mere moral stigma or reputational harm

arising from a conviction.") (citation omitted). An alleged consequence will rise above the reputational or speculative level when a petitioner demonstrates that a writ of error *coram nobis* will eliminate an ongoing harm resulting from a criminal conviction. *Biondi*, 2014 U.S. Dist. LEXIS 44220, at *8-9 (citing *Panarella*, 2012 U.S. Dist. LEXIS 50338, at *9-10; *United States v. Loftus*, 796 F. Supp. 815, 828 (M.D. Pa. 1992)).

Among the previously identified consequences, Salahuddin contends that his conviction deprives him of the ability to seek employment in a field in which he has obtained over 35 years of experience, *i.e.*, public office. The Government raises two grounds in opposing Salahuddin's employment-related arguments:

> First, [Salahuddin] has not proffered any evidence about what positions he would be seeking and whether he is ineligible for those positions. He must present more than the mere assertion set forth in his petition . . . Second, even if his conviction were overturned, the facts of his serious misconduct as evidenced in multiple recordings of him . . . would remain a material factor for employers considering hiring [Salahuddin] to work in a public safety position.

United States Opposition Brief ("Gov.'s Opp."), at 19-20. Neither of these contentions are sufficient to rebut Salahuddin's alleged harm for the purpose of asserting a cognizable collateral consequence.

Contrary to the Government's position, Salahuddin supports his employment-related assertions through the submission of a previously executed consent order, dated March 7, 2014. As provided therein, the consent order was entered into between Salahuddin and John J. Hoffman, the then Acting Attorney General of New Jersey. Relevant here, the terms and conditions of the consent order implement certain ongoing and employment-related sanctions, providing in pertinent part:

> IT IS ON THIS 7th day of March, 2014, ORDERED that Ronald Salahuddin, forfeit any public employment, office or position held by him, including but not

limited to his former position as Deputy Mayor for Public Safety for the City of Newark.

IT IS FURTHER ORDERED, that Ronald Salahuddin is forever disqualified from holding any office or position of honor, trust, or profit under this State or any of its administrative or political subdivisions, pursuant to N.J.S.A. 2C:51-2d.

. . .

IT IS FURTHER ORDERED that the above forfeiture of public office and permanent disqualification from holding any public office or position . . . is deemed to have taken effect on October 14, 2011 (the date of defendant's federal conviction) *unless and until Ronald Salahuddin successfully overturns his federal conviction.*

Petitioner's Reply Brief ("Pet.'s Reply"), Consent Order (dated March 7, 2014) (emphasis added). Pursuant to the language of the order, Salahuddin suffers from a present, non-speculative harm directly stemming from his prior criminal conviction. Indeed, in light of his conviction, Salahuddin is precluded from obtaining any public office, including any "position of honor, trust, or . . . any . . . administrative or political subdivisions[.]" *Id.* Moreover, in light of the consent order's complete prohibition on public employment, Salahuddin need not identify a particular position which is no longer available to him as all positions are no longer available. Upon consideration of the circumstances presented, the Court finds that Salahuddin has identified a present harm for the purpose of asserting a cognizable collateral consequence. In sum, Salahuddin's criminal conviction automatically disqualifies him from returning to a former area of employment, in which he is significantly experienced. *See, e.g.*, *Panarella*, 2011 U.S. Dist. LEXIS 84102, at *27-28 (declarations from municipal officers indicating the petitioner's criminal conviction completely barred employment established collateral consequence); *Loftus*, 796 F. Supp. at 827 (letter stating that the petitioner's criminal conviction will adversely impact his employment application established a collateral consequence); *Biondi*, 2014 U.S. Dist. LEXIS 44220, at *8-9 (directing the petitioner to demonstrate a collateral consequence by

submitting evidence such as an affidavit establishing that his criminal conviction barred employment).

Additionally, the issuance of a writ of error *coram nobis* will eliminate the precise harm which stems from his criminal conviction. As the consent order indicates, Salahuddin's employment ban will remain in effect "unless and until [he] successfully overturns his federal conviction." Pet.'s Reply, Consent Order. Contrary to the Government's position, Salahuddin need not establish that his prior employment will automatically resume from the issuance of a writ. *Loftus*, 796 F. Supp. at 827 (finding that the collateral consequence requirement was satisfied even where "vacating [the petitioner's] conviction and sentence [would] not assure that his [employment] application [would] be granted," because "while his conviction remains of record, his chances will be markedly diminished."). Because an award of *coram nobis* relief will vacate Salahuddin's criminal conviction, he has adequately pled a cognizable collateral consequence.

Accordingly, an analysis of Salahuddin's additional alleged harms is not required; indeed, his employment-related contentions, without more, are sufficient to properly demonstrate an ongoing collateral consequence. Notwithstanding this showing, however, Salahuddin has failed to meet the remaining requirements in support of his petition.

### b. Timeliness

As to the timeliness requirement, Salahuddin has not provided a "sound reason" in justification of his failure to seek timely *coram nobis* relief or challenge the disputed jury instructions at the trial or appellate level. Although the Supreme Court's decision in *McDonnell* was issued on June 27, 2016, Salahuddin delayed his petition to vacate his criminal conviction until April 2, 2018—more than 21 months later. Notwithstanding this substantial passage of

time, Salahuddin disputes that the instant application is untimely on two grounds. First, Salahuddin contends that his petition was brought within an acceptable timeframe and cites *United States v. Russo*, 358 F. Supp. 436 (D.N.J 1973), wherein "five years . . . elapse[d]" between the filing of that petitioner's writ of error and the issuance of the supporting Supreme Court precedent. Pet.'s Reply, at 6. Second, Salahuddin argues that he "is not required to show that he diligently pursued his claim because he is 'actually innocent' of the charged offense," an exception which ordinarily applies within the context of habeas relief. *Id*. Neither of these contentions excuse Salahuddin's failure to timely file the instant petition.

Despite the absence of a formal deadline by which a petitioner must file a writ of error, the Third Circuit has held: "th[e] [applicable] 'sound reason' standard is even stricter than that used to evaluate [28 USC] § 2255 petitions" for habeas corpus relief. *Mendoza v. United States*, 690 F.3d 157, 159 (3d Cir. 2012); *Stuler*, 614 Fed. Appx. at 598 ("The standard for granting a writ of error *coram nobis* is even stricter than the standard for relief on direct appeal or on § 2255 review.") (citation omitted); *Stoneman*, 870 F.2d at 106 ("The interest in finality of judgments dictates that the standard for a successful collateral attack on a conviction be more stringent than the standard applicable on a direct appeal . . . . It is even more stringent than that on a petitioner seeking habeas corpus relief under § 2255") (citations and quotations omitted). Notably, a petitioner who raises a § 2255 challenge to an allegedly improper conviction must file a petition for habeas corpus within one year from the date on which supporting precedent is decided.

Here, Salahuddin's Motion was filed significantly outside of the one-year limitations period set forth under § 2255. Because the governing law requires that the "sound reason" standard is stricter than that which is applicable to a § 2255 petition, and based on the facts and

circumstances set forth on this application for the writ, I find that Salahuddin's 21-month delay in seeking a writ of error *coram nobis* serves as a procedural bar to his ability to successfully vacate his criminal conviction. *United States v. Woodward*, No. 12-11431, 2012 U.S. Dist. LEXIS 145775, at *10-11 (D. Mass. Oct. 10, 2012) (applying § 2255's one-year limitations period and finding that the petitioner's application "does not meet the timeliness test for a *coram nobis* petition").

Although Salahuddin references *Russo* in connection with his timeliness argument, his reliance on that decision is inapposite. I do not find *Russo* persuasive because the decision lacked any discussion as to whether the petitioner's application for a writ of error *coram nobis* was filed timely; the court, there, instead merely noted that the petitioner's "probationary period expired prior to the filing of [his] motion." *Russo*, 358 F. Supp. at 437. I also note that *Russo* was decided in 1973—significantly before the Third Circuit's decisions in *Mendoza* and *Stoneman*. Because those decisions placed a stricter burden on a petition for a writ of error *coram nobis* than a request for § 2255 relief, to the extent *Russo* can be read to permit a five-year delay, it cannot stand in light of Third Circuit precedent.

Nor is the instant application saved by Salahuddin's alleged "actual innocence." Specifically, the "actual innocence" exception, *i.e.,* factual innocence, not mere legal insufficiency, is generally applied within the context of habeas relief. *Bousley v. United States*, 523 U.S. 614, 623 (1998). The "actual innocence" exception is properly invoked where a petitioner "establish[es] that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him" of the underlying crime. *Cordaro v. United States*, No. 17-215, 2017 U.S. Dist. LEXIS 143347, at *29 (M.D. Pa. Sept. 1, 2017) (citing *United States v. Tyler*, 732 F.3d 241, 246 (3d Cir. 2013)). Although a petitioner may satisfy this burden

by "demonstrating an intervening change in law that rendered his conduct noncriminal," the "actual innocence" exception is reserved for "extraordinary case[s.]" *Id.* (citing *United States v. Davies*, 394 F.3d 182, 191 (3d Cir. 2005)). Indeed, the exception "is purposefully demanding to ensure that a successful petition is truly extraordinary." *Id.* (citing *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 184 (3d Cir. 2017)).

At the threshold level, Salahuddin fails to sufficiently demonstrate that the "actual innocence" exception extends to a petitioner's failure to timely file a writ of error *coram nobis*. Salahuddin, in a conclusory fashion, instead avers that his actual innocence "directly excuse[s] untimely petitions for common law relief such as writs of *coram nobis*" by generally referencing the Supreme Court's decision in *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (2013), without providing further discussion. Pet.'s Reply, at 6. However, that decision is inapplicable to the circumstances at hand, as the Supreme Court's analysis, there, was confined in the context of habeas relief. More importantly, Salahuddin does not cite any case law within this circuit wherein a court applied the "actual innocence" exception to an untimely petition for *coram nobis*. Nevertheless, to the extent that the exception applies, Salahuddin has failed to assert a proper claim of actual innocence. Indeed, Salahuddin's conviction for conspiring to violate the Hobbs Act remains valid even under the Supreme Court's limited interpretation of an "official action" in *McDonnell*, further discussed *infra*.[3]

---

[3] Although Salahuddin argues that his petition is timely because the Government has not alleged prejudice, he fails to provide any authority in support of the Government's obligation to make such a showing. The burden, here, instead rests solely with Salahuddin, who must demonstrate that he acted diligently in filing this petition. *See Babalola*, 248 F. App'x at 412; *Stoneman*, 870 F.2d at 106.

Additionally, Salahuddin has not articulated a "sound reason" for failing to challenge the jury instructions at the trial or appellate level. In this regard, Salahuddin contends that he was unable to previously dispute the Court's interpretation of an "official action" because he does not possess "the telepathic presence to anticipate *McDonnell* prior to it being decided." Pet.'s Reply, at 9. Salahuddin further contends that, in the absence of the Supreme Court's *McDonnell* decision, he lacked a "definitive articulation and analysis as to the concept of an 'official act' for purposes of the Hobbs Act." *Id.* at 10. Therefore, according to Salahuddin, the only available form of relief is the instant application.

Contrary to Salahuddin's contentions, he was capable of challenging the disputed jury instructions before *McDonnell*. The Supreme Court's *McDonnell* decision "did not announce a new rule of constitutional law, but rather clarified the meaning of what constitutes an 'official act' under the federal bribery statute." *In re Cordaro*, No. 16-4156, 2016 U.S. App. LEXIS 24002, at *1 (3d Cir. 2016) (citation omitted). In that connection, the state of the law at the time of Salahuddin's conviction did not preclude him from objecting to, or appealing on the basis of, this Court's definition of an "official act." Although Salahuddin may have preferred a more "definitive articulation and analysis as to the concept of an official act," the absence of such does not excuse his failure to argue for a narrower construction of that statutory term in the trial or appeals court. Indeed, "[t]hat the law is unsettled does not justify a delay in filing a *coram nobis* petition . . . ." *Mendoza v. United States*, 690 F.3d 157, 160 (3d Cir. 2012) (citations omitted); *Bousley v. United States*, 523 U.S. 614, 623 (1998) ("[F]utility cannot constitute cause . . . if it means simply that a claim was unacceptable to that particular court at that particular time.") (quotations omitted).

In fact, the *McDonnell* decision demonstrates that Salahuddin had the opportunity to dispute the Court's jury instructions. Notably, the petitioner, there, challenged the lower court's interpretation of an "official action" during, and at every stage of, his criminal trial. That included: (1) proposing jury instructions which narrowly construed an "official action" to exclude "routine activity[] or a 'settled practice[]' of an office-holder," with nothing more, *McDonnell*, 136 S. Ct. at 2366; and (2) moving to vacate his conviction through post-trial motions and on appeal, arguing that the jury was provided with a legally erroneous understanding of an "official action." *Id.* at 2367. Accordingly, that petitioner's conduct, under substantially similar circumstances, exemplifies the fact that Salahuddin had the opportunity to challenge the Court's interpretation of an "official act" prior to the instant petition. Salahuddin's failure to raise this dispute until approximately seven years after the date of his conviction, and more than 21 months following *McDonnell*, provides a basis for denying his request for *coram nobis* relief.

### c.    Fundamental Error

As to the final requirement, fundamental error, Salahuddin contends that the jury was improperly advised on the meaning of "official action" in light of the Supreme Court's narrow interpretation in *McDonnell*. In support, Salahuddin references various portions from the Government's indictment and trial summations, both of which he alleges are "checkered with serial erroneous descriptions on . . . corrupt 'official acts' undertaken by Mr. Salahuddin . . . ." Pet.'s Reply, at 19. In addition to the "outrageously incorrect pronouncements" of "official acts" contained therein, Salahuddin challenges the Court's instructions to the jury as completely in error. *Id.* at 21. Specifically, Salahuddin contends that the Court's definition of an "official act" was both incomplete and overly broad, such that the disputed instructions captured "lawful

conduct" on which the jury ostensibly founded its Hobbs Act conspiracy conviction. *Id*. at 24. Based on the totality of these circumstances, Salahuddin contends that his conviction must be vacated through the issuance of a writ of error *coram nobis*.

In *Stoneman*, the Third Circuit set forth the appropriate standard for establishing a fundamental error. In that case, the petitioner moved to vacate his mail fraud conviction through a petition for *coram nobis* relief, in light of a subsequently decided Supreme Court decision, *McNally. v. United States*. *Stoneman*, 870 F.2d at 104. As that petitioner argued, *McNally* considerably narrowed the scope of the mail fraud statute, invalidating a theory upon which he was convicted and the jury was instructed. *Id*. at 105. However, the district court ultimately denied the petitioner's application to vacate his conviction, finding that it remained valid under *McNally*. *Id*.

On appeal, the Third Circuit held that, although the lower court's instructions to the jury conflicted with *McNally*, "[a]n error which could be remedied by a new trial, such as an error in jury instructions, does not normally come within the writ."[4] *Id*. at 106-07 (citations omitted). Accordingly, the Third Circuit affirmed the lower court's decision and reasoned that, notwithstanding the improper instructions to the jury, the petitioner could not demonstrate that

---

[4] Salahuddin contends that, since *Stoneman* "was issued[,] no federal court has invoked *Stoneman* for the position that an erroneous jury charge may never be the basis for *coram nobis* relief." Pet.'s Reply, at 28. Salahuddin misconstrues that case, as *Stoneman* does not foreclose the possibility of vacating a conviction based on a deficient jury instruction, but rather the decision provides that such relief does not normally fall within the writ's scope, a principle upon which numerous district courts within this circuit have relied. *See, e.g.*, *United States v. Cruz-Veloz*, No. 07-1023, 2010 U.S. Dist. LEXIS 72603, at *3 (D.N.J. July 20, 2010); *United States v. Zuckerman*, No. 91-108, 2009 U.S. Dist. LEXIS 5946, at *4 (D.N.J. Jan. 28, 2009); *Lovett v. United States*, No. 09-1659, 2009 U.S. Dist. LEXIS 85518, at *5 (D.N.J. Sept. 17, 2009); *Johnson v. Abraham*, No. 04, 4935, 2004 U.S. Dist. LEXIS 22944, at *3 (E.D. Pa. Nov. 1, 2004); *United States v. Rota*, No. 95-2828, 1998 U.S. Dist. LEXIS 17680, at *5 (E.D. Pa. Nov. 6, 1998).

any error was fundamental, because his underlying conduct remained circumscribed by the *McNally* decision:

> The indictment against Stoneman charged and the evidence the jury heard established an offense within the meaning of [the mail fraud statute], as interpreted by the Supreme Court in *McNally*. Stoneman did not suffer a conviction for conduct that was not criminal. [H]e failed to meet the burden imposed on him in a *coram nobis* proceeding of overcoming the presumption that his conviction was valid. It is not enough for him to show that it *may* have been invalid.

*Id.* at 108 (emphasis in original). The Third Circuit further reasoned that this conclusion served two significant purposes: (1) "properly balanc[ing] the tension between principles of finality and the law's ideal of seeing that no man is improperly convicted," and (2) "distinguish[ing] the type of review available on direct appeal from the less searching examination into trial error available on collateral review through the more limited remedy of *coram nobis*." *Id.* at 108. Ultimately, the Third Circuit held that these considerations and the petitioner's inability to show a fundamental error precluded an award of *coram nobis*, as the indictment and trial evidence established a valid crime under *McNally*.[5]

Here, as a preliminary matter, Salahuddin attempts to manufacture a "fundamental error," improperly relying on limited portions from the Government's indictment and summations, which he alleges constitute improper examples of "official acts." Moreover, despite the absence of any objection from Salahuddin during trial, he now contends that the burden of correcting the Government's errors fell on the Court, and the failure to rectify the improper interpretations of an "official action" inevitably led to his wrongful conviction. Pet.'s Reply, at 17-22. Salahuddin's

---

[5] Although Salahuddin relies on *Stoneman* in support of his instant petition, he nevertheless, also challenges its constitutionality and attempts to distinguish that case as non-controlling precedent, because a portion was written only by one circuit judge. However, Salahuddin's contentions are without merit; if not controlling, the *Stoneman* decision constitutes widely-cited, persuasive authority from the Third Circuit which remains valid law. As such, *Stoneman* may properly guide this Court in resolving the instant dispute.

position conflicts with the requirements set forth by the Third Circuit in *Stoneman*. Indeed, a petitioner may not seek to vacate a conviction by scrutinizing the underlying record and finding an isolated instance on which to file for a petition of *coram nobis*. *Stoneman*, 870 F.2d at 108 ("It is not enough for [a petitioner] to show that [a conviction] may have been invalid."). Instead, the petitioner must demonstrate that the indictment failed to allege, and the evidence did not demonstrate, a valid crime on which the jury could have reasonably convicted Salahuddin. Salahuddin fails to meet this burden.

Specifically, Count 1 of the indictment charged Salahuddin with conspiring to violate the Hobbs Act, with the intention:

> [t]o obstruct, delay, and affect interstate commerce by extortion under color of official right—that is, by obtaining money and other valuable benefits, including demolition business and contributions from the [Cooperating Witness] and the [Cooperating Witness's] company, with the [Cooperating Witness's] consent, in exchange for the official action and influence of defendant Salahuddin as specific opportunities arose.

Indictment, Count 1, ¶ 12. Accordingly, the indictment alleged a cognizable conspiracy to violate the Hobbs Act and required the Government to show that Salahuddin performed an "official action" in order to obtain a conviction. In that connection, the Court instructed the jury as follows: "[o]fficial action means any action by an official relating to his employment or function as a public service to include using one's influence with other government officials or expediting treatment of the payor's business with the government." Trial Transcript, dated Oct. 6, 2011, 29:5-9. Importantly, Salahuddin agreed to such a definition at trial.

To the extent that the Court's definition of an "official act" is overly inclusive, in light of *McDonnell*, this error does not rise to the level "of the most fundamental kind" warranting *coram nobis* relief. *Stoneman*, 870 F.2d at 106. But more significantly, notwithstanding the disputed instructions, the evidence adduced at trial demonstrated that Salahuddin performed an "official

act" within the meaning of *McDonnell*. To reiterate, the two-pronged "official action" test under *McDonnell* includes the following: (1) "[t]he question, matter, [or] cause, . . . must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused . . . ."; and (2) "the public official must make a decision or take an action on that question, matter, [or] cause . . . or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act by another official." *McDonnell*, 136 S. Ct. at 2371-72 (quotations omitted).

Unlike *McDonnell*, wherein the defendant's alleged "official acts" included (a) arranging meetings, (b) hosting events, and (c) contacting government officials pertaining to broad issues such as "economic development," the Government, here, demonstrated that Salahuddin acted on "specific and focused" matters. *Id*. at 2367. The evidence at trial included recorded conversations between Salahuddin, Mazzacchi, acting as an FBI informant, and Cooper. Mazzacchi and Cooper both owned and operated demolition companies in New Jersey, the latter of which Salahuddin maintained a concealed financial interest. *Salahuddin*, 2012 U.S. Dist. LEXIS 100296, at *2. Notably, the recorded conversations evidenced an agreement by which Salahuddin would exercise his official power by influencing those in charge of awarding demolition contracts from the City of Newark and the New Jersey Devils to Mazzacchi, who was then expected to provide subcontracting work to Cooper. *Id*. Cooper, in turn, would receive a direct financial benefit, while Salahuddin would profit indirectly, through his silent partnership with Cooper. *Id*. at *3. Salahuddin also sought to maintain the demolition work in connection with the New Jersey Devils arena private, in order to avoid a public bidding process. Viewed cumulatively, the

evidence at trial demonstrated that Salahuddin agreed to perform an official act which related to a "question, matter, [or] cause" on "something specific and focused that is pending or may by law be brought before a public official"—assigning government contracts. *McDonnell*, 136 S. Ct. at 2371-72 (quotations omitted); *United States v. Repak*, 852 F.3d 230, 253-54 (3d Cir. 2017) ("In the language of *McDonnell*, the award[ing] of [government] contracts is specific and focused. It is a concrete determination . . . and the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete.") (citation and quotations omitted); *Cordaro v. United States*, 2017 U.S. Dist. LEXIS 143347, at *36 ("[T]the awarding of government contracts fits unquestionably within the revised description provided for official acts" by the Supreme Court in *McDonnell*) (citation omitted). Therefore, the jury was presented with evidence that falls within the first *McDonnell* prong.

An "official act" is defined to include "using [an] official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act by another official." *McDonnell*, 136 S. Ct. at 2372 (quotations omitted). In this regard, the evidence at trial demonstrated, and the Third Circuit so found on appeal, that although Salahuddin lacked the actual authority to award contracts, he "use[d] his political influence to steer demolition work to Mazzocchi," an ability which he represented he possessed: "I just tell people this is what we want and that's the way, you know, it can happen." *Salahuddin*, 765 F.3d at 334-35. Moreover, Salahuddin procured several charitable contributions from Mazzocchi, in order to exercise his political influence in a more effective manner over certain public officials, including Bob Minter, Newark's Demolition Director. Indeed, Salahuddin informed Minter, who was authorized to assign government contracts, that Mazzocchi was a "friend of the administration" and Minter understood this

representation to mean that he should assign government contracts to Mazzocchi. *Id*. at 334-35. Accordingly, the evidence at trial demonstrates that Salahuddin performed an "official act" as he made "a decision or [took] an action on [a] question, matter, [or] cause . . . or agree[d] to do so" within the meaning of *McDonnell*. *McDonnell*, 136 S. Ct. at 2372. His criminal conviction remains valid.[6]

Finally, Salahuddin contends that the instant petition is justified on the basis of two separate errors in connection with the jury instructions on Hobbs Act conspiracy, not based upon intervening change of law. Specifically, Salahuddin argues that the following omissions constitute fundamental error: (1) "the district court instructed the jury that Salahuddin could be found guilty without finding that Salahuddin was acting under the color of official right and without having obstructed interstate commerce"; and (2) "the trial court gave the limited unanimity charge that the jury's verdict must be the decision of each juror; omitted but which should have been addressed is that the jurors must be unanimous as to which of the act(s) Salahuddin conspired to achieve, as alleged by the government." Pet.'s Brief, at 32, 40. These arguments are without merit.

Although Salahuddin contends that the substance of the Court's jury instructions in this context are defective, he is attempting to reraise issues that were affirmed on appeal. As to his first argument, the Third Circuit affirmed this Court's instruction on the Hobbs Act conspiracy

---

[6]     Salahuddin also challenges the following portion of the Court's instructions to the jury as fundamental error: "you may consider as evidence against a particular defendant any acts done or statements made by any members of the conspiracy during the existence of . . . the conspiracy." Pet.'s Brief, at 13. However, Salahuddin's argument is without merit. Indeed, the language which Salahuddin disputes is unrelated to the definition of an "official act," is routinely provided in conspiracy cases, and tracks the Third Circuit's Model Jury Instructions, § 6.18.371K ("[Y]ou may consider as evidence against [defendants] any acts done or statements made by any members of the conspiracy, during the existence of and to further the objectives of the conspiracy."). Thus, there is no fundamental error on this basis.

charge which "track[ed] the Third Circuit's Model Criminal Jury instructions and adequately define[d] the relevant terms under the governing case law." *Salahuddin*, 765 F.3d at 344 (citing *United States v. Urban*, 404 F.3d 754, 768 (3d Cir. 2005)). And although Defendant, once again, contends that the element of "extortion under color of official right" cannot be sustained because he never obtained nor agreed to obtain any payments, the Third Circuit disposed of this argument: "[t]he goal of the conspiracy—here, obtaining something of value under color of official right—need not be achieved for a conspiracy conviction." *Salahuddin*, 765 F.3d at 341. Salahuddin cannot relitigate this issue on a petition for a writ of error, in an effort to obtain a more favorable result. Likewise, his remaining argument fails for this reason. In regard to the Court's unanimity charge, the Third Circuit already determined: "[c]onspiracy seeks to punish only the *act* of agreeing to commit an offense, so the jury verdict only needs to be unanimous as to that act . . . . We conclude that the District Court did not err, let alone plainly err, in failing to issue a specific unanimity instruction *sua sponte*." *Id*. at 345 (emphasis in original). Therefore, I reject Salahuddin's contentions. *DiModica v. United States*, No. 08-6156, 2009 U.S. Dist. LEXIS 67660, at *11 (D.N.J. Aug. 4, 2009) ("Petitioner cannot now use the writ of error *coram nobis* to relitigate [his] claims."); *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980) ("[I]t is well-settled that once a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated" in a petition for *coram nobis* relief) (citation and quotations omitted); *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack . . . .").

Nevertheless, even if the Third Circuit had not addressed Salahuddin's arguments, Salahuddin has failed to provide a sound reason for his delay in raising them on this petition, more than seven years following his conviction. These challenges are unrelated to the Supreme

Court's decision in *McDonnell*, and Salahuddin has not identified any intervening case law upon which to justify his untimeliness. To the contrary, Salahuddin concedes that he supports these contentions with "crystal clear" "ruling[s] . . . before the Salahuddin case," some of which date from as early as 1992, and were already distinguished on appeal.[7] Pet.'s Brief, at 33, 35. Equally fatal, Salahuddin has not identified any post-conviction, exculpatory evidence upon which to base these arguments. Instead, they stem from the same factual record which both this Court and the Third Circuit considered previously in upholding the jury's conviction of Hobbs Act conspiracy.

## III. CONCLUSION

For the foregoing reasons, I find that Salahuddin has failed to satisfy the requirements of the writ, and therefore, his petition for a writ of error *coram nobis* is **DENIED**.

Dated: October 29, 2018

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge

---

[7] Specifically, these cases include *United States v. Manzo*, 636 F.3d 56 (3d Cir. 2011) and *United States v. Beros*, 833 F.2d 455 (3d Cir. 1987), both of which Salahuddin heavily relies upon in support of his petition.